1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
2                         **COVINGTON DIVISION**

| | | |
|---|---|---|
| 3 | **ALEX MORTIMER** | :: |
| | **Plaintiff** | ::     **Civil Action No:** |
| 4 | | :: |
| | **vs.** | ::     **Judge** |
| 5 | | :: |
| | **JAKE SWEENEY AUTOMOTIVE** | |
| 6 | **OF FLORENCE, INC.** | ::     **U.S. Mag. Judge** |
| | **dba JAKE SWEENEY KIA** | |
| 7 | **c/o Jacob B. Sweeney III** | :: |
| | **5969 Centennial Circle** | |
| 8 | **Florence, Ky. 41042** | :: |
| 9 | **and** | :: |
| 10 | **Capital One Auto Finance, Inc.** | :: |
| | **Agent for Service of Process** | |
| 11 | **7933 Preston Rd.** | :: |
| | **Plano, TX 75024** | |
| 12 |       **Defendants** | :: |

13

14     **Complaint for Civil Damages for Violation of Federal & State Odometer Law, Ky,**
**Federal Truth-in-Lending Act, Ky Consumer Protection Act; & Ky Vehicle Retail**
15          **Installments Sales Act; Attorney Fees & Demand for Jury Trial**

16

17                          **PREAMBLE**

18
This is an action for damages and other relief arising from Defendant Sweeney
19
giving false and inaccurate disclosure of the mileage on a vehicle's odometer at the time
20
of its sale in violation of the Motor Vehicle Information and Cost Savings Act, 49
21
U.S.C. §32701, et seq. and the Ky Motor Vehicle Sales Act, K.R.S. §190.260, et seq., the
22
failure to make proper disclosure of credit terms under the federal Truth-in-Lending Act,
23
15 U.S.C. §1601, et seq. and Reg. Z, 12 cfr 1026.1, et seq., the Ky Motor Vehicle Retail
24
Installment Sales Act, K.R.S. §190.090, et seq. and the Ky. Consumer Sales Practices
25
Act, §367.110, et seq.
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction under Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32710, the federal Truth-in-Lending Act, 15 U.S.C. §1640(e) and 28 U.S.C. §1331. Further, the Court may exercise its supplemental jurisdiction of all state law claims plead herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that Plaintiff's state law claims are so related to his federal claim that they form part of the same case or controversy. Venue is proper  because the events that took place occurred entirely in this Division.

**PARTIES**

2.  Plaintiff, Alex Mortimer (hereinafter referred to as "Mortimer" or "Plaintiff") is a resident of  Coweta County, Newnan, Ga. who is an "individual", "person" and "transferee" as defined in 49 U.S.C. §32701, et seq. and K.R.S. §190.010(2) and both a "person" and "consumer" as defined respectively in 15 U.S.C. §1602(d) and (h).

3. Defendant, Jake Sweeney Automotive of Florence, Inc. Dba Jake Sweeney KIA (hereinafter referred to as "Sweeney" or "Defendant") is a corporate entity which conducts a new and used car sales business at 5969 Centennial Circle, Florence, Boone, County, Ky and a "dealer" and a "distributor" within the meaning of 49 U.S.C. § 32702 (2) and (3), a "motor vehicle dealer" as it is defined at K.R.S. §367.110(2) and a "creditor" as it is defined at 15 U.S.C. §1602(f) who, at all times referenced herein, dealt with and made both written and oral representations to the Plaintiff concerning a vehicle.

4. Defendant, Capital One Auto Finance, Inc., [hereinafter "COAF or "Defendant"] is a corporation transacting business principally from 7933 Preston Rd., Plano, TX  whose business it is to purchase and/or accept for assignment, retail installment sales obligations or contracts as they are defined in the Ky Retail Installment Sales Act, KRS 190.090(7).

1

2  It, by virtue of contract, has agreed to be subject to all claims and defenses which may be

3  asserted by the Plaintiff against the seller is Defendant, Jake Sweeney Automotive of

4  Florence, Inc. dba Jake Sweeney Kia. Defendant Capital One Auto Finance, while

5  transacting business in the Commonwealth, is not registered with the Secretary of State to

6  do so.

7  ### GENERAL FACTUAL ALLEGATIONS

8  5. On or about July 14, 2020 Plaintiff began looking online at different car

9  dealerships for a 4 door performance vehicle. After hours of research and watching

10  review videos of American made performance cars, he decided that a 2016-2017

11  Chevrolet SS 4 door sedan was the appropriate vehicle with performance power and

12  practicality in mind.

13  6. Plaintiff found several in his price range but the one that interested him the most

14  was a 2016 Chevrolet SS Sedan Red Hot color with 45,001 miles advertised at Jake

15  Sweeney Kia in Florence, Inc. [hereinafter the "vehicle"]. This caught his attention

16  because, with this vehicle no longer being manufactured and only having been in

17  production for 3 years with only 3,015 made in 2016, the vehicle was a rare find which

18  Plaintiff believed held good resale value. Plus, Defendant was advertising the vehicle

19  with a lifetime warranty at no additional cost. The vehicle was also advertised on other

20  websites such as carguru.com and carfax.com.

21  7. On or about July 28, 2020 Plaintiff sent Defendant Sweeney an email through

22  carguru.com expressing interest in the vehicle and asking if it was still available. A

23  salesman, Don Houser, responded that it was and suggested that Plaintiff come and take a

24  test drive. Plaintiff declined the offer since he lived 450 miles away and informed the

25  salesman that if his credit was approved, because of Covid-19, he was interested in

26  conducting the entire transaction online and having the vehicle shipped to his residence.

27

28

1

2  Plaintiff further inquired about the lifetime warranty that was advertised and was

3  informed that it was only good at Jake Sweeney dealerships but that an extended warranty

4  or service contract was available at an additional cost. He was further informed that if he

5  wanted the vehicle shipped to his residence he would have to locate a shipper and pay the

6  additional cost of shipping. Plaintiff continued to express interest in purchasing the

7  vehicle and instructed the salesman to begin the application process and, in furtherance

8  thereof, authorized his credit to be checked. Houser informed him that he would be

9  receiving a call from the finance manager.

10      8. Finance Manager, Shane Soard, soon called and informed the Plaintiff that his

11  credit had been approved. The parties then began to negotiate the terms for both the

12  purchase and financing of the vehicle which ultimately resulted in the execution of a retail

13  installment sales contract and obligation.

14      9. Defendant overnighted all the required documentation to the Plaintiff at his

15  residence all of which he immediately executed and returned. However, only a single

16  copy of ALL documents were mailed to him for signature none of which Plaintiff was

17  able to retain.

18      10. Shortly thereafter Plaintiff, at his cost, paid for the delivery of the vehicle

19  which arrived on August 6, 2020.

20

21

22

23

24

25

26

27

28

**CLAIM ONE**
**[FEDERAL ODOMETER ACT]**

11. Plaintiff seeks damages under 49 U.S.C. §32701, et seq. ("Motor Vehicle Information & Cost Savings Act"-hereinafter the "Act").

12. As part of the transaction Sweeney expressly advertised that the vehicle had 45,001 miles on its odometer and further disclosed this figure on a federal odometer disclosure statement given to the Plaintiff.

13. Plaintiff paid for the delivery of the vehicle and had it delivered to a Walmart location less than 3 miles from his home on August 6, 2020. When the vehicle arrived Plaintiff carefully inspected it and observed that it had 45636 miles on its odometer.

14. When Plaintiff inquired about this discrepancy he was informed by text that "the manager had been driving the vehicle as a demo".

15. Plaintiff fully relied on the Defendants' representation concerning the number of miles on the vehicle as being 45,001 when he agreed to purchase the vehicle.

16. Defendants actually knew that at the time of the sale of the subject vehicle that mileage it represented in connection with its sale of the vehicle was not the actual miles.

17. Defendants violated the federal Odometer Act by failing to make appropriate disclosure and by giving false statements and representations in transferring the vehicle, in violation of 49 U.S.C. §32705(a)(1)(A)&(B).

18. Defendants violated the federal Odometer Act with intent to defraud.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLAIM TWO**
**[KY ODOMETER ACT]**

19.  This claim is made pursuant to the ***Ky Motor Vehicle Sales Act,*** K.R.S. §190.260, et seq. [hereinafter the "Act"].

20. Plaintiff hereby fully incorporate the allegations of paragraphs 11-18 as if fully rewritten herein.

21. Defendant actually knew that at the time of the sale the mileage on the vehicle were not the actual miles.

22.  Defendant violated the Act by failing to make appropriate disclosures and by giving false statements in transferring the vehicle, in violation of K.R.S. §190.270.

23.  Defendants violated the Act with intent to defraud.

**CLAIM THREE**
**[TRUTH-IN-LENDING]**

24. Plaintiff seeks damages under federal Truth-in-Lending Act, 15 U.S.C. §1601, et seq. ("TILA")-hereinafter the "Act") and under Regulation Z, 12 cfr 1026.1, et seq., which are regulations promulgated pursuant to the Act.

25. Plaintiff hereby incorporates each and every allegation previously alleged in paragraphs 1-10.

26. Plaintiff is a "consumer" as the term is defined in the Act at 15 U.S.C. §1602(h).

27. Sweeney is a "creditor", who, in the ordinary course of its business regularly extends or arranges for the extension of credit to consumers as defined in the Act at 15 U.S.C. §1602(f).

28. On or about July 28, 2020 the parties entered into a credit sale transaction as defined in the Act at 15 U.S.C. §1602(g) in which Sweeney sold Plaintiff a 2016 Chevrolet SS motor vehicle and then extended credit for its purchase amounting to $43,417.44 at 72 payments of $603.02[hereinafter the "deal"]. It then sold and/or assigned the deal to the defendant COAF who became subject to all claims and defenses which Plaintiff could assert against Sweeney.

**COUNT ONE**

29. Both the Act and Reg. Z, promulgated pursuant thereto, require the disclosure of certain material credit terms all of which are expressly enumerated in 15 U.S.C. §1638(a) [hereinafter referred to as the "disclosures"].

30. Such disclosures must be made prior to or at the time of the consummation of the transaction and given to the consumer in a form that he or she may keep in order to comply with Reg. Z, 12 cfr 1026.17(a) (1) .

31. Defendant overnighted what might have been a retail installment sales contract to the Plaintiff containing such disclosures for his execution and return but not in a form that he was able to keep. Plaintiff, therefore, had no copies of his credit disclosures in order for him to be aware of his credit terms.

32. Plaintiff texted Defendant on several occasions asking for copies of his retail installment sales contract and other documents and, while he was promised them by Sweeney, they were never provided.

33. Finally, after numerous requests, Sweeney mailed them to Plaintiff contained in an envelope postmarked August 27, 2020 and received thereafter more than a month after the consummation of the transaction.

1

2      34. For all intents and purposes, Defendant failed to provide Plaintiff with any

3   meaningful disclosure as required under the Act at 15 U.S.C. §1638(a) and Regulation Z,

4   12 cfr 1026.1 et seq.

5

6                                    **COUNT TWO**

7      35. Plaintiff hereby incorporates each and every allegation of paragraphs 24-34.

8      36. Plaintiff and Sweeney executed a retail installment sales contract on or about

9   July 28, 2020 in which Defendant expressly designated itself as a "seller-creditor."

10     37.  However, in connection with the transaction, Sweeney required Plaintiff to

11  execute a separate document known as a "Conditional (Spot) Delivery Agreement."

12  [hereinafter the "Spot"]. This document essentially provided, without going into full

13  detail, the ability of Sweeney to cancel, change or negate the contract along with the

14  credit terms previously disclosed if it was unable to sell or assign the deal to a third party

15  lender such as Defendant COAF.

16     38. The parties executed a binding agreement on July 28, 2020 where Sweeney

17  agreed to sell and to finance credit terms which Sweeney disclosed on July 28, 2020. The

18  failure of the Defendant to sell or assign the deal to a third party should have no bearing

19  on such disclosure.

20     39.  Additionally, the retail installment sales contract itself under the heading

21  **"How This Contract Can Be Changed"** expressly provides that the document contains

22  the **"entire agreement between you and us"**.

23     40. Furthermore, case law is clear that in order for the spot delivery agreement,

24  such as the one Sweeney had Plaintiff execute, can only be effective if the terms of that

25  agreement are fully integrated into the retail installment sales agreement itself which it

26  was not.

27

28

41. As a practical matter the use by Sweeney of the Spot which purports to negate or cancel the credit disclosure terms of the retail installment sales agreement which the parties previously executed and which provides that the terms may be changed or altered, constitutes a violation of the Act and Regulation Z because it fails to provide concrete credit disclosures upon which the Plaintiff is entitled to rely.

**CLAIM FOUR**
**[DECEPTIVE & UNCONSCIONABLE**
**SALES PRACTICES]**

42. This claim is made pursuant to the *Ky Consumer Protection Act,* K.R.S. 367.110, et seq. [hereinafter referred to as the "Act"].

43. Plaintiff, Alex Mortimer is a "person**"** as defined in the "Act" at K.R.S. §367.110(1) as well as a "consumer."

44. The Defendant Sweeney is a "supplier" and a "seller" engaged in the sale of used motor vehicles to consumers like the Plaintiff.

45. On or about July 28, 2020 the parties entered into a "consumer transaction" for the sale and financing of a motor vehicle, namely a 2016 Chevrolet SS [hereinafter the "subject vehicle"].

46. Generally speaking, in connection with the sale of the subject vehicle Defendant Sweeney engaged in a number of unlawful acts which may be considered unfair, false, deceptive, misleading and unconscionable pursuant to K.R.S §367.170.

47. Without limiting the scope and number of any violations committed, Defendant Sweeney's conduct as described herein constituted certain unfair, deceptive and unconscionable sales practices as follows:

48. By falsely representing that the subject of a consumer transaction had characteristics that it did not have.

1

2   49. By falsely representing that the subject of a consumer transaction was of a

3   particular standard when it was not.

4   50. By knowingly taking advantage of Plaintiff's inability to protect himself.

5   51. By knowing in advance of the sale to the Plaintiff of his inability to receive a

6   substantial benefit from the subject of the consumer transaction.

7   52. By knowingly requiring the Plaintiff to enter into a transaction on terms that

8   were substantially one-sided in favor of Defendant.

9   53. By knowingly making statements of opinion on which the Plaintiff was likely

10   to rely to her detriment.

11                                   **COUNT ONE**

12   54. Plaintiff hereby incorporates each and every allegation of paragraphs 5-10 as if

13   fully rewritten herein.

14   55. During negotiations for price Sweeney attempted to assess Plaintiff a $1599

15   "Environmental Protection Assurance Package" ["EPAP"] cost. When Plaintiff inquired

16   as to what that was he was informed by Shane Soard that it was a "required" item which

17   was already applied to the vehicle as a type of sealant to protect its paint and other things.

18   56. Plaintiff balked at paying for the item and Sweeney agreed to reduce the

19   charge to $599.

20   57. When the vehicle was delivered Plaintiff, who had previous experience

21   detailing cars, carefully inspected it and determined that the EPAP had not been applied

22   to the vehicle. When Plaintiff confronted Sweeney it conceded that fact. It agreed to

23   refund the $599 and did. However, the $599 continued to be included in the amount

24   financed upon which finance charge will continue to accrue over the payment period of

25   72 months.

26

27

28

**COUNT TWO**

58. Plaintiff hereby incorporates each and every allegation of paragraphs 5-10, 11-18 & 42-53 as if fully rewritten herein.

59. Defendant advertised and further represented to the Plaintiff that the vehicle had 45,001 miles on its odometer. Plaintiff purchased the vehicle relying on this representation.

60. Plaintiff had the vehicle transported to a location within 3 miles of his residence where he checked its odometer.

61. Upon its arrival Plaintiff checked the odometer and determined that the odometer indicated mileage of 45636 miles on its odometer and not the 45,001 that were represented.

**COUNT THREE**

62. Plaintiff hereby incorporates each and every allegation of paragraphs 5-10, 11-17 & 42-53 as if fully rewritten herein.

63. Sweeney agreed to tender sufficient funds to allow Plaintiff to register his vehicle in the county of his residence which, among other things included sales tax and registration fees.

64. Sweeney tendered payment in the amount of $2135.94 which, when Plaintiff went to his local motor vehicle bureau office, was $217 short of the amount required to register the vehicle.

65. Plaintiff then contacted Sweeney on several occasions asking it to make up the $217 difference it had agreed to pay and each request was ignored.

66. Finally, because his temporary registration was about to expire, Plaintiff paid the $217 out of his own pocket.

1

2

3

**CLAIM FIVE**
**[KY MOTOR VEHICLE RETAIL INSTALLMENT**
**SALES ACT]**

4   67. This claim is brought pursuant to the Ky Motor Vehicle Retail Installment

5   Sales Act, K.R.S. §190.090.

6   68. Plaintiff hereby incorporates paragraphs 29-34**.**

7   69. Plaintiff is a "person" as well as a "retail buyer" of a motor vehicle both

8   defined respectively at K.R.S. §190.090(1) & (6).

9   70. Defendant Sweeney is a "retail seller" of a motor vehicle as defined in the Act

10   at K.R.S. §190.090(5).

11   71. On or about July 28, 2020 the parties entered into a "retail installment sale"

12   which resulted in a "retail installment contract" both defined at K.R.S. §190.090(2) and

13   K.R.S. §190.090(3).

14   72. Defendant COAF is a "sales finance company" as defined at K.R.S.

15   §190.090(7) which took an assignment of a retail installment sales contract.

16   73. K.R.S. §190.100(2) requires a retail installment sales contract to contain all the

17   agreements between the parties.

18   74. Defendant Sweeney required the Plaintiff to sign a separate "spot delivery

19   agreement" which contained terms which allow Sweeney to contradict, negate or

20   completely ignore the terms of the retail installment sales agreement**.**

21   75.  K.R.S. §190.100(4) required Sweeney to furnish a copy of a retail installment

22   sales contract at the time the contract is executed which it failed to do until after many

23   requests approximately one month later.

24   76. Sweeney further included $599 for a fictional EPAP item which was not

25   provided on the vehicle as represented which made it ineligible for inclusion in the cash

26   price as it is defined both in K.R.S. §190.090(8) and K.R.S. §190.090(15).

27

28

77. Defendant Sweeney is, therefore,  liable for violating K.R.S. §190.100 which provides that a violation shall result in a forfeiture of all finance charges contracted for.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Honorable Court:

A. In claim one for an award statutory damages for violation of the federal Odometer Act in the amount of $10,000.00;

B. In claim two for an award $1500.00 for violation of the Ky Odometer Act;

C. In claim three both statutory and actual damages under the federal truth-in-lending act;

D. In claim four an award actual and punitive damages for violation of the Ky Consumer Protection Act;

E. In claim five for forfeiture of $7000 in finance charge under the Ky Vehicle Retail Installment Sales Act;

F. Award reasonable attorney's fees in all claims which authorize the payment of such fees as well as costs;

G. For a trial by jury on all appropriate issues; and,

H. Grant such other relief as it deems just and proper.

Respectfully submitted by:

*/s/Steven C. Shane*
Steven C. Shane (0041124)
Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, Ky. 41073
(859) 431-7800
(859) 431-3100 facsimile
shanelaw@fuse.net

- 13 -